Filed 3/21/23 Pacific Attorney Group v. Panahi CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| PACIFIC ATTORNEY GROUP, | B311435 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV41299) |
| v. | |
| FRED PANAHI et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Dennis J. Landin, Judge. Affirmed.

Jeff Lewis Law, Jeffrey Lewis and Sean C. Rotstan for Defendants and Appellants.

Pacific Attorney Group, Michael P. Hollomon, Jr. for Plaintiff and Respondent.

## INTRODUCTION

Client Fred Panahi retained Pacific Attorney Group (PAG) to represent him in a legal matter under a contingency fee agreement. Panahi later replaced PAG with attorney Kamelia Jalilvand and her law firm, Jalilvand Law Corporation (JLC). The legal action was settled with a payment to Panahi.

PAG sued Panahi, Jalilvand, and JLC, asserting that PAG was owed attorney fees under the contingency fee agreement and resulting lien. PAG asserted multiple causes of action alleging that the defendants wrongfully excluded PAG from the settlement agreement, as well as a cause of action for declaratory relief. Jalilvand and JLC filed a special motion to strike under the anti-SLAPP statute, Code of Civil Procedure, section 425.16.[1] The superior court granted the motion as to all causes of action except a single claim for declaratory relief. Jalilvand and JLC appealed, asserting that the declaratory relief cause of action also arose from protected activity, and therefore the motion should have been granted as to that cause of action as well.

We affirm. The cause of action for declaratory relief regarding the attorney lien did not arise from protected speech or petitioning activity.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Complaint

PAG filed its complaint on October 28, 2020, alleging the following facts. Panahi was in a car-versus-bicycle accident involving Uber on March 13, 2017; he retained PAG to represent

---

[1]    "SLAPP" stands for "strategic lawsuits against public participation." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 139.) All further section references are to the Code of Civil Procedure unless otherwise indicated.

him in a personal injury claim. Panahi signed a contingency fee agreement promising to pay PAG one-third (33.33 percent) of the gross amount recovered from any source in connection with the claim, or if Panahi were to terminate PAG's representation, to pay the value of PAG's services from any recovery connected with the claim.

In December 2018, Panahi terminated PAG's representation and retained attorney Jalilvand and her firm, JLC (collectively, appellants). PAG notified appellants about its attorney lien. In May 2019, Panahi settled his claim. In June 2019 JLC informed PAG that the claim had been settled for $450,000, but in August 2019 JLC told PAG that the claim had been settled for $415,000.

PAG alleged that Panahi and appellants had notice that PAG "has a valid lien for attorneys fees and costs," and PAG's name was required to be on any payment draft or settlement dispersal. PAG alleged that Panahi and appellants "refused to confirm the true amount of the settlement," refused to share the settlement agreement with PAG, and refused to honor the attorney lien. PAG alleged that it had not been paid, and Panahi and appellants "continue to withhold" the owed fees.

PAG alleged 10 causes of action: (1) intentional interference with prospective economic advantage, (2) negligent interference with prospective economic advantage, (3) fraud, (4) conversion, (5) breach of written contract (against Panahi only), (6) unjust enrichment, (7) declaratory relief, (8) accounting, (9) constructive trust, and (10) money had and received. Only the seventh cause of action for declaratory relief is at issue in this appeal.

3

In the first, second, third, and eighth causes of action, PAG alleged defendants had a duty to include PAG's name in the draft settlement agreement for Panahi's claims. Allegations included, for example, that the defendants "acted consciously" to disrupt PAG's rights "by promising to include [PAG's] name on the settlement draft, then wrongfully excluding [PAG's] name from the settlement draft, or forging [PAG's] endorsement thereon." In the fourth, sixth, and ninth causes of action, PAG alleged that after the settlement had been paid, defendants withheld the funds that should have been paid to PAG. The fifth and tenth causes of action alleged that Panahi and defendants had not paid money owed to PAG.

The seventh cause of action for declaratory relief alleged that there was a controversy between PAG and defendants as to their respective rights and duties regarding whether defendants were "obligated to pay [PAG] in connection with the legal services rendered by [PAG] to . . . Panahi." Although the cause of action incorporated earlier paragraphs, it did not allege any wrongdoing by Panahi or appellants with respect to the litigation or settlement.

## B. Anti-SLAPP motion

Appellants filed an anti-SLAPP special motion to strike under section 425.16. Appellants admitted that Panahi settled his action for $415,000. Emails attached to the motion indicated that on June 11, 2019 JLC informed PAG about the settlement and asked about a lien, and on June 21 PAG responded that it did indeed have a lien. Appellants stated in their motion that a check was issued in full satisfaction of the settlement, and "[t]he settlement check makes no mention of" PAG. The check,

4

attached to the motion as an exhibit, was made out to "Fred Panahi, Jalilvand Law, and any applicable lien holders."

Appellants argued that PAG's claims arose from protected activity because they were connected to Panahi's lawsuit. Although they argued that the "gravamen of [PAG's] claims is unintelligible, legally untenable, and equitably irreconcilable with the facts of this case," they also asserted that "protected settlement activity . . . lies 'at the heart of' the claims asserted by" PAG. Appellants further asserted that PAG's claims had no probability of success for multiple reasons, including immunity under the litigation privilege (Civ. Code, § 47) and because PAG could not prove its claims.

In its opposition, PAG asserted that the anti-SLAPP law "cannot act as a complete bar to PAG's rights of action in the civil court to recover on its lien." It asserted that its claims did not arise from protected activity, because "PAG is not suing Jalilvand for anything Defendants may have said or done in court," and its claims did not implicate any public issue. PAG argued that defendants' actions were "collateral and incidental" to any protected activity. PAG further contended that it had a probability of prevailing, as demonstrated by the evidence submitted by appellants with their motion, stating that "Jalilvand concedes PAG's right to attorney's fees" and the issue "is simply a dispute as to how much." Appellants filed a reply in support of their motion.

## C.    Hearing and ruling

At the hearing on the motion, the court asked appellants' counsel to distinguish a case cited in the opposition, *California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032 (*California Back Specialists*), which held that an action

5

involving a medical lien in a personal injury case did not arise from protected activity under section 425.16. Appellants' counsel asserted that *California Back Specialists* was distinguishable because here there was no evidence of a lien. Counsel for appellants added, "[I]t would be one thing if it was a singular cause of action for declaratory relief; it's a whole other ballgame when they're asserting causes of action . . . for fraud, conversion, constructive trust, intentional interference . . . ." She continued, "[T]hey could have just, you know, resolved this dispute by bringing a dec[laratory relief] action, they didn't want to do that." The court and counsel discussed some additional cases, and the court took the matter under submission.

In a written ruling, the court denied appellants' motion as to the seventh cause of action for declaratory relief, and granted it for all of the remaining causes of action. Addressing the first step of the anti-SLAPP analysis, the court held that all but the seventh cause of action arose from protected activity. The court reasoned that the "'principal thrust or gravamen' of PAG's claims is that Defendants wrongfully deprived PAG of a one-third contingency fee from the settlement proceeds," so "protected settlement activity" formed the basis of the challenged claims.

The court stated that the same was not true for the seventh cause of action for declaratory relief, which "does not allege Defendants engaged in wrongdoing in the settlement. . . . Rather, it simply asks the court to declare the parties' respective rights to attorney fees; it does not seek to prevent Defendants from exercising their right to their protected activity." The court held that the "cause of action alleges the existence, validity, and value of PAG's lien, which is a separate issue from the petitioning settlement activity. Therefore, the Court finds that the seventh

cause of action does not arise from Defendants' protected activity and is therefore not subject to a special motion to strike under Section 425.16."

The court turned to the second step of the anti-SLAPP analysis for the non-declaratory relief claims, and held that PAG had not demonstrated a probability of prevailing. The court therefore granted the motion as to all causes of action except the one for declaratory relief. The court awarded appellants attorney fees as prevailing party.

Appellants timely appealed.

## DISCUSSION

Appellants contend the superior court erred by denying the motion for the declaratory relief cause of action, because the "foundation for PAG's claim was protected activity – the negotiation and settlement of the Panahi action." They also contend PAG cannot show a probability of prevailing on this cause of action. PAG asserts that defendants' failure to pay the lien is not protected activity, even if the lien is related to litigation. We find no error.

## A.    Legal background

"A cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788, citing § 425.16, subd. (b)(1).) Section 425.16, subdivision (e) describes four categories of acts "'in furtherance of a person's right of petition or free speech'": "(1) any written or oral statement or writing made before a

7

legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) "If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Ibid*.)

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. [Citations.] In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.] We do not, however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Park, supra*, 2 Cal.5th at p. 1067.) The appellant bears

8

the burden of affirmatively demonstrating error.  (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.)

## B.    Arising from protected activity

In the first step under the anti-SLAPP analysis, the court determines whether the plaintiff's claims arise from protected activity.  (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)  At this stage, the "defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity."  (*Ibid.*)  "A claim arises from protected activity when that activity underlies or forms the basis for the claim."  (*Park, supra*, 2 Cal.5th at p. 1062.)  "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability."  (*Id.* at p. 1063.)  Thus, "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted."  (*Id.* at p. 1060.)

The superior court held that appellants had not met their burden to show that the declaratory relief cause of action arose from protected activity.  The court granted the motion for the causes of action alleging wrongdoing relating to excluding PAG from the settlement agreement, effectively stripping those causes of action from the complaint.  The court noted that in the remaining declaratory relief cause of action, PAG did not allege that defendants engaged in wrongdoing based on their representation of Panahi or in entering into the settlement.  Instead, PAG sought only a declaration of the parties' respective

rights with respect to PAG's lien, which was not a cause of action arising out of protected activity.

The court's analysis is supported by the case law. The court relied on *Drell v. Cohen* (2014) 232 Cal.App.4th 24 (*Drell*), one of several cases holding that a cause of action for declaratory relief on a lien is not barred under section 425.16, even if the lien arose in the context of litigation. In *Drell*, a client retained the defendants, an attorney and a law firm, to represent him in a car accident case. A second attorney eventually took over representation and settled the client's case. The insurance carrier issued the check to both the defendants and the second attorney. A dispute arose about entitlement to attorney fees from the settlement check, and the second attorney filed a declaratory relief action to determine the parties' respective rights. (*Drell, supra*, 232 Cal.App.4th at p. 27.) The defendants filed a special motion to strike under section 425.16, asserting that "the complaint 'flows entirely from the Underlying Action'" and "the lien was asserted in anticipation of litigation and therefore qualified as protected activity." (*Id*. at p. 28.) The superior court denied the motion and the defendants appealed.

The Court of Appeal affirmed the holding that the claim did not arise out of protected activity. It stated, "[A] complaint is not a SLAPP suit unless the gravamen of the complaint is that defendants acted wrongfully by engaging in the protected activity. The complaint here did not allege defendants engaged in wrongdoing by asserting their lien. Rather, the complaint asked the court to declare the parties' respective rights to attorney fees. The complaint necessarily refers to defendants' lien, since their demand letter is key evidence of plaintiff's need to obtain a declaration of rights,[ ] but the complaint does not

10

seek to prevent defendants from exercising their right to assert their lien." (*Drell, supra*, 232 Cal.App.4th at p. 30.)  The court added, "None of the purposes of the anti-SLAPP statute would be served by elevating a fee dispute to the constitutional arena, thereby requiring a party seeking a declaration of rights under an attorney lien to demonstrate a probability of success on the merits in order to obtain equitable relief."  (*Ibid*.)

*Drell* relied on *California Back Specialists*, *supra*, 160 Cal.App.4th 1032, the case the superior court asked about at the motion hearing. In that case, clients retained the defendant attorney to represent them in personal injury cases, and the medical provider plaintiffs, CBSMG, provided treatment to the clients pursuant to liens on their personal injury actions.  The actions were settled, and the attorney disbursed the proceeds without notifying CBSMG or satisfying the medical liens.  CBSMG sued the attorney for payment of the liens, and the attorney filed a special motion to strike under section 425.16.  The superior court denied the motion, finding that the claim did not arise out of protected activity. (*California Back Specialists, supra*, 160 Cal.App.4th at pp. 1035-1036.)

The Court of Appeal affirmed.  It noted that the "anti-SLAPP statute does not apply where protected activity is only collateral or incidental to the purpose of the transaction or occurrence underlying the complaint."  (*California Back Specialists, supra*,160 Cal.App.4th at p. 1037.)  The court stated, "CBSMG's complaint is based on the underlying controversy between private parties about the validity and satisfaction of the liens.  These issues were never under consideration in any court or official proceedings until CBSMG filed the current action." (*Ibid*.)  The court continued, "Not all attorney conduct in

11

connection with litigation, or in the course of representing clients, is protected by section 425.16. [Citations.] The trial court correctly determined that CBSMG's claims did not arise from any act in furtherance of appellant's right to petition or his right to free speech." (*Id*. at p. 1037.)

*Drell* also cited *Personal Court Reporters v. Rand* (2012) 205 Cal.App.4th 182 (*Personal Court Reporters*), in which the plaintiff court reporters sued attorneys who used the reporters' services but did not pay their fees. The defendant attorneys filed a special motion to strike under section 425.16, which the superior court denied. (*Personal Court Reporters, supra,* 205 Cal.App.4th at pp. 186-188.) This Division affirmed the ruling on the basis that "nonpayment of overdue invoices" was "nonprotected activity." (*Id*. at p. 190.) We stated, "Notwithstanding that the complaint was filed *after* court reporting services were provided in the underlying cases, we conclude the acts alleged in the complaint did not arise from the underlying lawsuits for purposes of the anti-SLAPP statute." (*Id*. at p. 189.) We noted that any protected activity was "only incidental to the causes of action for breach of contract and common counts, which are based essentially on nonprotected activity—the nonpayment of overdue invoices." (*Id*. at p. 190.) We concluded, "We therefore hold that because the allegations of arguably protected activity are only incidental to the 'principal thrust or gravamen' of the complaint [citation], the anti-SLAPP statute does not apply to the complaint in this case." (*Id*. at p. 191.)

The reasoning of these cases applies squarely here, where PAG's declaratory relief cause of action seeks a declaration of the parties' rights regarding the lien, but does not assert any

12

wrongdoing with regard to appellants' representation of Panahi. A cause of action is subject to a special motion to strike "only if the speech or petitioning activity *itself* is the wrong complained of (*Park, supra*, 2 Cal.5th at p. 1060), and *Drell, California Back Specialists*, and *Personal Court Reporters* all hold that failure to pay a lien—the wrong complained of by PAG—is not protected litigation activity.

Appellants acknowledge the holding of *Drell*, but assert that this case is more like *O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546 (*O&C Creditors*). That case has a much more complex background and is not similar to this one. In *O&C Creditors*, a client, Stephens, retained an attorney to represent him in a claim against his insurance company, Fireman's Fund. Fireman's Fund was represented by law firm Akin Gump. Stephens and his attorney had an unsigned attorney-client fee agreement purporting to give rise to a lien on any recovery. The attorney was forced into bankruptcy and then died. Stephens, working with a different attorney, eventually settled the underlying claim against Fireman's Fund for $5.8 million. Stephens settled an attorney fee claim with the bankruptcy trustee, but a bankruptcy creditor purchased any remaining claim to the settlement proceeds. Stephens then filed a declaratory relief action against the creditor, and the creditor "filed a cross-complaint for $2.32 million against Stephens (for unpaid legal fees) and against Akin Gump and Fireman's Fund (for settling the insurance coverage lawsuit in derogation of the alleged attorney lien)." (*O&C Creditors, supra,* 42 Cal.App.5th at pp. 553-556.)

Fireman's Fund and Akin Gump filed a special motion to strike the cross-complaint under section 425.16. (*O&C Creditors,*

*supra,* 42 Cal.App.5th at p. 559.) The superior court granted the motion and a majority of the Court of Appeal affirmed. The majority observed that the "gist of [the creditor's] cross-complaint is that Fireman's Fund and its attorneys at Akin Gump . . . acted in derogation of a purported attorney lien by settling the underlying insurance coverage lawsuit and executing a settlement with Stephens." (*Id*. at p. 565.) The court stated, "Stephens's and Fireman's Fund's protected settlement activity . . . underlie the elements of [the creditor's] claim.[ ] The protected settlement activity thus lies 'at the heart of' the claims asserted" by the creditor. (*Id*. at p. 568.) The court contrasted the facts of *Drell*, in which the litigation activity constituted *evidence* of the parties' rights, but was not the basis for the claim. The *O&C Creditors* court stated, "Far from providing mere evidentiary support for or being incidental to the challenged claims, the settlement agreement is the crux of cross-defendants' allegedly wrongful conduct." (*Id*. at p. 571.) The court concluded that the creditor's claims "are thus based on and arise from a purportedly wrongful settlement agreement," which was protected activity under section 425.16.[2] (*Ibid*.)

Appellants argue that *O&C Creditors* is more akin to this case because PAG's complaint included several causes of action alleging intentional wrongdoing by appellants in their

---

[2] Notably, Justice Streeter, concurring in part, disagreed with this aspect of the majority opinion. He concluded that "[t]his sort of attorney lien litigation has nothing to do with free speech or petitioning activity." (*O&C Creditors, supra,* 42 Cal.App.5th at p. 577.) He also stated, "[T]he cross-defendants' act that gave rise to these causes of action was the disbursement of money in derogation of an attorney lien. Such conduct is not speech or petitioning activity in any sense." (*Id*. at p. 578.)

14

representation of Panahi and their handling of the settlement. However, the court struck the claims asserting intentional wrongdoing. Thus, even if PAG's initial allegations were similar to those in *O&C Creditors* regarding wrongful adoption of a settlement agreement, those causes of action are no longer viable. It was appropriate for the court to strike the claims that arose from protected activity and reserve the claim that did not. (See, e.g., *Bonni, supra*, 11 Cal.5th at p. 1011 ["Striking a cause of action that rests in part on unprotected activity constrains a plaintiff's ability to seek relief without advancing the anti-SLAPP's goals of shielding protected activity, which would have been fully served by striking from the complaint only the allegations of protected activity."].)

The sole remaining cause of action for declaratory relief seeks only a declaration of existing rights as to the lien, and does not assert that any of defendants' actions in the litigation were wrongful. (See, e.g., *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 111 [in the first-step analysis, the court considers "'the *acts on which liability is based*'"].) The declaratory relief cause of action attacks neither the terms of the settlement agreement nor appellants' litigation-related conduct. Indeed, even appellants' counsel at the hearing below agreed that a declaratory relief action would be appropriate under the circumstances. Defendants' involvement in Panahi's litigation may be *evidence* of the parties' respective rights to attorney fees, but is not the basis for PAG's claim. PAG's cause of action for declaratory relief therefore did not arise from protected activity.

Because appellants did not meet their burden on the first step of the anti-SLAPP analysis, we do not consider their

15

alternative, second-step argument that PAG failed to demonstrate a probability of success on this cause of action.

## DISPOSITION

The order is affirmed.  PAG is entitled to its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


CURREY, ACTING, P.J.


STONE, J. *

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.