Filed 4/29/25  Morgan v. Mayfield CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JAMIE MORGAN, | C097883 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2020-00285928-CU-PN-GDS) |
| v. | |
| MARK MAYFIELD, | |
| Defendant and Respondent. | |

Plaintiff Jamie Morgan appeals an order granting a special motion to strike under the anti-SLAPP (strategic lawsuit against public participation) statute, which permits a court to strike causes of action arising from an act in furtherance of the constitutional right of free speech or petition.  (Code Civ. Proc., § 425.16.)[1]

The underlying lawsuit stems from juvenile dependency petitions involving Morgan's two young children.  After the juvenile court sustained the dependency

---

[1]     Undesignated section references are to the Code of Civil Procedure.

petitions and removed the children from Morgan's custody, Morgan brought this action against, among others, her court-appointed guardian ad litem—defendant Mark Mayfield, an attorney by vocation—alleging that he negligently failed to protect her legal rights and interests in the juvenile dependency proceeding.

Mayfield filed a motion to strike under the anti-SLAPP statute, arguing that Morgan's causes of action against him arose from protected activity and that Morgan could not show a probability of prevailing on the merits. The trial court granted the motion, and this appeal followed. Finding no error, we affirm.

BACKGROUND FACTS AND PROCEDURE

On or about June 8, 2018, Sacramento County Department of Child, Family and Adult Services (the county agency) filed juvenile dependency petitions on behalf of Morgan's children. The petitions alleged that Morgan had a history of drug abuse and mental health problems that jeopardized the children's safety. In response to the petitions, the juvenile court scheduled a detention hearing and appointed counsel for the parties. Dependency Associates of Sacramento (Dependency Associates) was appointed as Morgan's counsel, and attorney Stephen Avis was assigned to her case.

Morgan appeared at the detention hearing on June 12, 2018, represented by Avis. Before the hearing, Avis determined, based on conversations with Morgan, that Morgan lacked the mental capacity to assist him in protecting her rights. Thus, Avis asked the juvenile court to appoint a guardian ad litem. The court explained to Morgan the purpose of a guardian ad litem and the broad powers that he or she would have to direct and control litigation on her behalf. Morgan said she understood and consented to the appointment, adding that it "[s]ounds good." The court appointed Mayfield as Morgan's guardian ad litem and then continued the detention hearing so that Mayfield could be present.

Morgan appeared at the continued detention hearing, represented by Avis as counsel and Mayfield as guardian ad litem. On Morgan's behalf, Avis objected to

2

detention. Mayfield said nothing on the record. The juvenile court ordered the children detained, delegated placement to the county agency, and set the matter for a jurisdiction hearing.

The jurisdiction hearing was held on July 10, 2018. Morgan, Mayfield, and Avis all appeared at the hearing. On behalf of Morgan, Avis relayed that Morgan denied the allegations, objected to the children's placement, and objected to the juvenile court taking jurisdiction. Avis also informed the court that Mayfield, as Morgan's guardian ad litem, was "submitting on jurisdiction." As before, Mayfield said nothing on the record. The court found jurisdiction and scheduled a disposition hearing.

At the disposition hearing on November 27, 2018, Morgan appeared and was represented by attorney Ruthie Roberts from Dependency Associates. Mayfield did not appear. Roberts informed the juvenile court that Morgan had no objection to the current case plan or proposed services, but Morgan objected to the proposed placement. The court found the allegations in the petition to be true, adjudged the children to be dependents, ordered the children removed from Morgan's custody, and approved the case plan and reunification services.

A six-month review hearing was held on May 14, 2019. On that date, the juvenile court relieved Morgan's appointed counsel and substituted a new attorney, Michael Borkowski. At Borkowski's request, the court inquired whether Morgan still needed the guardian ad litem. Mayfield expressed no objection to being relieved, and the court granted the request to relieve him as guardian ad litem.

In or about September 2020, Morgan filed this action against Avis, Dependency Associates, and Mayfield (collectively, defendants). Her first amended complaint (the complaint) alleges two causes of action.

The first cause of action, for legal malpractice, alleges that defendants were appointed to represent plaintiff in the dependency cases and, "[a]s . . . attorneys at law," they had duties to "competently, carefully, and diligently advocate on her behalf and

. . . protect her fundamental rights to parent her children." The complaint alleges that defendants breached these duties by failing to investigate the case, prepare a defense, and advise Morgan of her rights; contest the detention report; contest the placement recommendation; request discovery from child protective services; contest jurisdiction; and appear at the disposition hearing. Morgan specifically complains that Mayfield, as the guardian ad litem and "more experienced" attorney, did not respond to her requests to discuss the case and did not say "a single word" on the record at the detention or jurisdiction hearing.

The second cause of action, for negligent infliction of emotional distress, incorporates the allegations of the first cause of action and alleges that defendants' negligent conduct directly and proximately caused Morgan to suffer serious emotional distress. As a result of defendants' conduct, Morgan alleges she was deprived of the custody of her children and thereby suffered damages in an amount to be proven at trial.

Mayfield filed a special motion to strike the complaint against him pursuant to section 425.16 (the anti-SLAPP motion). Morgan opposed the motion.

The trial court granted the anti-SLAPP motion. Citing cases arising in the context of demurrers, the trial court reasoned that it could look beyond the allegation that Mayfield acted as Morgan's attorney because it was contradicted by other allegations in the complaint, exhibits thereto, as well as declarations submitted with the moving papers. From this, it concluded that Mayfield carried his initial burden of demonstrating that Morgan's claims arose from protected activity, namely, Mayfield's conduct as the court-appointed guardian ad litem. The court further concluded that Morgan failed to carry her burden of demonstrating a probability of prevailing on the merits of her claims because (1) the uncontradicted evidence established that Mayfield acted only in the capacity of a guardian ad litem and not as Morgan's attorney, and (2) Mayfield is entitled to quasi-judicial immunity for acts within the scope of his authority as the guardian ad litem.

4

Morgan timely appealed the order granting the motion to strike and judgment of dismissal.  (§§ 425.16, subd. (i), 904.1, subd. (a)(13).)

DISCUSSION

I

*The anti-SLAPP statute*

The Legislature enacted section 425.16 to encourage participation in matters of public significance and protect defendants from meritless lawsuits that might chill the exercise of a party's constitutional right of petition or free speech.  (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884; *Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 883.)  To that end, the statute establishes a procedure for weeding out such claims at an early stage of the litigation, limiting the costs of defending against such claims.  (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 642.)  The statute provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)  The Legislature has specified that the statute should be "construed broadly" to protect the constitutional rights of petition and free speech.  (§ 425.16, subd. (a); *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 416.)

The resolution of an anti-SLAPP motion involves a two-step process.  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)  At the first step, the moving defendant bears the initial burden of establishing that the challenged claim arises from activity protected by the anti-SLAPP statute.  (*Ibid.*)  If the defendant makes this showing, the burden shifts to the plaintiff to demonstrate a probability of success on the merits.  (*Ibid.*)  Only a claim

that satisfies both prongs is subject to being stricken under the statute. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

We review an order granting an anti-SLAPP motion de novo, using the same two-step approach as the trial court. (*Alpha & Omega Development, LP v. Whillock Contracting, Inc.* (2011) 200 Cal.App.4th 656, 663.)

II

*First Prong: Protected Activity*

Morgan first argues the trial court erred in finding Mayfield met his threshold burden to show her claims arose from protected activity. We find no error.

Under the first prong of the anti-SLAPP analysis, the moving defendant must make a "threshold showing that the challenged cause of action is one 'arising from' protected activity." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.) The critical consideration is whether the cause of action is *based on* protected activity. (*Navellier, supra*, 29 Cal.4th at p. 89.) The focus is not on the form of the cause of action, but on "the defendant's activity that gives rise to his or her asserted liability—and whether that activity [itself] constitutes protected speech or petitioning." (*Id.* at p. 92, italics omitted; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063.)

In deciding whether this initial requirement is met, we are not limited to examining the allegations of the complaint. (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 408.) We may consider factual materials submitted in connection with the motion to strike to determine what conduct is being challenged. (*Ibid.*; § 425.16, subd. (b)(2).)

Once we have identified the alleged acts giving rise to a claim for relief, we must determine whether those acts constitute protected activity under the statute. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009-1010.) The statute defines protected activity to include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under

6

consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) A defendant can show a cause of action arises from protected activity by demonstrating that the act underlying the cause fits one of these categories. (*Navellier, supra*, 29 Cal.4th at p. 88.) The burden is "not an onerous one." (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 112 (*Optional Capital*).)

Applying these principles, we conclude Mayfield met his initial burden to show Morgan's claims arose out of protected activity. It is well established that the anti-SLAPP statute protects litigation-related speech and petitioning activity undertaken on another's behalf. (*Optional Capital*, *supra,* 18 Cal.App.5th at p. 113; *Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 210; *Cabral v. Martins* (2009) 177 Cal.App.4th 471, 478-479; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1114-1116.) Courts have adopted " 'a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16.' " (*Optional Capital,* at p. 113, citing *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.) For example, "all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute." (*Cabral*, at p. 480; see *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [communicative conduct includes the filing, funding, and prosecution of a civil action]; *Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648, 660 [investigation is part of litigation].)

There is no requirement that the speech or petitioning activity be made "directly *to* the official body." (*Ludwig v. Superior Court of Riverside County* (1995) 37 Cal.App.4th

7

8, 17; accord, *Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 779 (*Crossroads Investors*); *Timothy W. v. Julie W., supra*, 85 Cal.App.5th at p. 659.)

Nor is it required that the protected activity entail an affirmative representation. The anti-SLAPP statute also protects litigation-related activity in which the defendant ostensibly *should have engaged*. (*Bowen v. Lin* (2022) 80 Cal.App.5th 155, 162.) An omission or concealment can be protected petitioning activity for purposes of section 425.16. (*Crossroads Investors, supra*, 13 Cal.App.5th at p. 779, fn. 9; *Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th 118, 123-124; *Navellier, supra*, 29 Cal.4th at pp. 89-90; see *Graham-Sult v. Clainos* (9th Cir. 2014) 756 F.3d 724, 739-740.) This is consistent with established free speech jurisprudence, which encompasses " 'what a speaker chooses to say, and what a speaker chooses not to say.' " (*Crossroads Investors*, at p. 779, fn. 9.)

In the present case, it is evident from the pleadings and the factual materials submitted in connection with the motion to strike that Mayfield is being sued for breaching duties arising from his role as the court-appointed guardian ad litem. The complaint alleges that because Mayfield is an attorney *and* served as the court-appointed guardian ad litem, he owed professional duties to competently and diligently represent Morgan's legal interests. The complaint alleges that Mayfield breached these duties by failing to adequately investigate the case, prepare a defense, advise Morgan of her rights, and advocate on her behalf. In short, Morgan's claims are based on Mayfield's acts and omissions in representing her in the dependency case. Construing the statute broadly, as we must (§ 425.16, subd. (a)), we conclude this was protected activity. (See *Contreras v. Dowling, supra,* 5 Cal.App.5th at pp. 410-411; *Optional Capital, supra*, 18 Cal.App.5th at pp. 114-115.) Thus, the trial court did not err in determining that Mayfield met his burden on the first step of the analysis.

III

*Probability of Success*

Because Mayfield met his threshold burden of showing that the challenged claims arose from protected activity, the burden shifted to Morgan to demonstrate a probability of success. (*Baral, supra*, 1 Cal.5th at p. 384.) During the second step of the anti-SLAPP analysis, the court evaluates the merits of the plaintiff's claims using a " 'summary-judgment-like procedure.' " (*Baral,* at p. 384.) "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Id*. at pp. 384-385.)

Mayfield contends, and the trial court found, that Morgan failed to demonstrate a probability of prevailing on the merits because (1) Morgan failed to present sufficient evidence to sustain her claims, and (2) her claims are barred by quasi-judicial immunity. We agree.

As we have noted, Morgan's claims against Mayfield are predicated on a theory of legal malpractice, i.e., that he breached his professional duties as an attorney. "To allege legal malpractice, the plaintiff must demonstrate 'the existence of an attorney-client relationship.' [Citation.] The existence of such a relationship is a question of law." (*McClintock v. West* (2013) 219 Cal.App.4th 540, 554-555 (*McClintock*).)

Here, Morgan has failed to present any admissible evidence to support the existence of an attorney-client relationship. There is no evidence (or even allegations) that Mayfield was appointed to serve as Morgan's attorney or that he entered a contractual attorney-client relationship with her. To the contrary, the evidence is uncontested that Mayfield acted only in the capacity as a court-appointed guardian ad litem, and never as Morgan's attorney. Morgan essentially concedes this point on appeal.

9

Instead, she contends Mayfield assumed the duties of an attorney by virtue of his "role" as the court-appointed guardian ad litem. Not so.

As our colleagues explained in *McClintock, supra*, 219 Cal.App.4th 540, " '[a] guardian *ad litem* is not a party to an action, but merely the representative of record of a party.' [Citation.] He or she 'represents the interests of a person in legal proceedings who lacks capacity to represent himself or herself . . . .' [Citation.] But while a guardian ad litem's role is as a representative of the ward, he or she does not act as an advocate, and does not simply represent the ward's wishes. 'The court is, in effect, the guardian of the minor and the guardian *ad litem* is but an officer and representative of the court. [Citation.]' [Citation.] (*Id*. at p. 549.)

"While the guardian ad litem has the power to assent to procedural steps that will facilitate a determination of the ward's case [citation], the guardian ad litem's authority is that of ' "an agent with limited powers." [Citation.]' [Citation.] For example, when a guardian ad litem believes that settling a case is in the ward's best interests, that decision requires court approval. [Citation.] The court has a duty to ensure that the ward's rights are protected by the guardian ad litem. [Citation.] The guardian ad litem, therefore, when representing an adult deemed incapable of representing himself or herself, is in a similar role to a conservator, who derives his or her authority from the power of the state to protect incompetent persons." (*McClintock*, *supra*, 219 Cal.App.4th at pp. 549-550; accord, *Chui v. Chui* (2022) 75 Cal.App.5th 873, 898.)

Because the guardian ad litem is a representative of the court, and not an advocate for the ward, "as a matter of law, there is no basis for finding an attorney-client relationship between a guardian ad litem and a ward" merely because the guardian ad litem happens to be an attorney. (*McClintock*, *supra*, 219 Cal.App.4th at p. 555; see also *Shen v. Miller* (2012) 212 Cal.App.4th 48, 61 [rejecting the argument that the guardian ad litem's attorney automatically had an attorney-client relationship with the ward].)

Accordingly, Morgan failed to meet her burden to state and substantiate a legally sufficient claim for legal malpractice.

Morgan additionally cannot demonstrate a probability of prevailing because Mayfield has immunity for the actions that he took as guardian ad litem. (*Wisner v. Dignity Health* (2022) 85 Cal.App.5th 35, 43 [a defendant may defeat a claim by showing that the plaintiff cannot establish an element of the claim or that there is a complete defense to it].) As a court-appointed officer, a guardian ad litem has absolute quasi-judicial immunity for "acts within the scope of the guardian's authority." (*McClintock*, *supra*, 219 Cal.App.4th at pp. 551-552.) Here, all of Morgan's claims against Mayfield are based on his acts or omissions as the court-appointed guardian ad litem. As such, the alleged conduct is protected by quasi-judicial immunity.

The trial court did not err in determining that Morgan failed to show a probability of prevailing on the merits.

## DISPOSITION

The judgment is affirmed. Mayfield is entitled to his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


_____\s\_____,
Krause, J.



We concur:


_____\s\_____,
Hull, Acting P. J.



_____\s\_____,
Robie, J.


11