Filed 12/8/25  Khalil v. Steiner CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SARA KHALIL et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>MAX STEINER,<br><br>Defendant and Appellant. | H052541<br>(Monterey County<br>Super. Ct. No. 24CV001104) |

On October 12, 2023, Sara Khalil, her teenage sister Maryam[1] Khalil, and their sister-in-law Pearl Warrick (together, plaintiffs), constructed a " 'Free Palestine' " sign out of shrubs and seaweed on a sand dune near Sand City known as "Scribble Hill," where it was visible from Highway 1 and the pedestrian path below the dune.  Max Steiner, who was cycling on the path, stopped his bicycle, climbed the dune, and began dismantling the sign while

---

[1] For clarity due to their shared surname, we refer to the younger Khalil by her first name, Maryam, and other all other parties by last name. (See, e.g., *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 550, fn. 2.) Two different spellings for Maryam appear in the record and briefing. Consistent with the complaint and trial court's order, we use the spelling "Maryam."

engaging in a heated verbal exchange with the young women. Each side accused the other of "supporting terrorism," and the women began recording the encounter on a cell phone. They retreated down the dune and kicked sand on Steiner's bicycle. Steiner followed, grabbed the cell phone from Maryam—allegedly also grabbing and restraining her in the process—and threw the phone toward the street, breaking it. After Steiner departed, plaintiffs reported the incident to the police and posted an edited version of the cell phone video to their social media.

Plaintiffs sued Steiner asserting causes of action for negligence, assault, battery, and violations of the Tom Bane Civil Rights Act (Bane Act) (Civ. Code, § 52.1) and the Ralph Civil Rights Act (Ralph Act) (Civ. Code, § 51.7). Steiner brought an anti-SLAPP motion[2] to strike the complaint, in its entirety, under Code of Civil Procedure[3] section 425.16. The trial court denied the anti-SLAPP motion, concluding that the negligence and Bane Act claims survived at the second step of the anti-SLAPP analysis, while the Ralph Act, assault, and battery claims did not arise from any speech or activity protected by section 425.16.

Exercising our independent review of the trial court's ruling and the appellate record, we conclude that the alleged acts forming the basis of plaintiffs' claims are not protected activities under the anti-SLAPP statute. Therefore, we affirm the order denying the special motion to strike.

---

[2] An anti-SLAPP motion is "a special motion to strike a 'strategic lawsuit against public participation (SLAPP).'" (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 773–774.)

[3] All further unspecified statutory references are to the Code of Civil Procedure.

2

# I. FACTS AND PROCEDURAL BACKGROUND[4]

Plaintiffs, born and raised in the United States, are Muslim. They were each wearing hijabs on the day in question. Khalil and her younger sister Maryam are of Palestinian descent. Khalil and Warrick are in their 20s, Maryam is a teenager, and all three of them are small in stature.

On the afternoon of October 12, 2023, plaintiffs met friends at the sand dune located near the Sand City exit of Highway 1. The sand dune is known locally as " 'Scribble Hill' " because it is a popular spot to engage in public forms of expression. Plaintiffs' friends had written " 'Free Gaza' " on the sand dune using sticks, shrubs, and plant debris. After their friends departed, plaintiffs stayed and changed the message to " 'Free Palestine' " to draw attention to "escalating events in the occupied West Bank."

Steiner was riding his bicycle on the path and saw three individuals assembling a large " 'Free Palestine' " sign using seaweed, sticks, and driftwood near the top of the dune. Steiner is a military veteran and former Congressional candidate who at the time was stationed at the Presidio of Monterey. Steiner stopped his bicycle at the bottom of the dune.

According to plaintiffs, Steiner began yelling and gesturing at them. He "began rapidly charging up the hill" toward them, calling them terrorists and accusing them of beheading children and supporting Hamas. Steiner

---

[4] We draw the following facts from the pleadings and declarations submitted in the trial court, excluding any evidence to which the court sustained objections. We accept as true plaintiffs' submissions concerning the facts upon which liability is based for the purpose of resolving whether the court erred in its denial of the anti-SLAPP motion and consider only whether any contrary evidence from Steiner establishes his entitlement to prevail as a matter of law. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*); *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 754 (*Laker*).)

3

"seemed frantic," and Khalil felt "terrified." Warrick was "very afraid." Khalil tried to diffuse the situation by introducing herself and asking Steiner his name, but he refused and responded, " 'So you terrorists can blast me?! You guys are supporting terrorism.' "[5] Steiner told plaintiffs they "were fortunate to drive [their] 'nice BMW in the land of the free' " and said it was " 'peak Palestinian' " and they could be " 'sending [their] money to refugees' instead." While arguing, Steiner began dismantling plaintiffs' sign with his hands.

Plaintiffs deny making antisemitic remarks during the encounter. Steiner disputes plaintiffs' characterization of the encounter. He states that he told plaintiffs their message "was inappropriate given the recent October 7, 2023, attack by Hamas on Israel," to which they responded with "anti-Semitic remarks, claiming the attacks were justified. They stated, 'the Jews deserved it' and 'resistance is justified.' " Steiner states that he walked up the dune and began removing the plant debris that formed their message, at which point plaintiffs began recording him with a cell phone.[6] Both sides stated that they would return the next day to erect, and erase, respectively, the message.

Plaintiffs began retreating down the sand dune while Steiner continued to dismantle their sign. At the base of the dune, plaintiffs kicked and pushed

---

[5] The quoted language is taken from the declarations of Khalil and Warrick, submitted in opposition to the motion to strike. The verbal exchange captured in the video and transcription, provided to the police by plaintiffs and submitted as an exhibit to Steiner's declaration in support of his motion to strike, differs slightly, with Steiner refusing to give his name and stating "Why the fuck would I do that? So some fucking terrorists can Dox me? . . . You guys are supporting terrorism."

[6] As noted *ante* (fn. 5), the recording captures a portion of the exchange between Steiner and plaintiffs and is included in the record on appeal, along with a transcription of the audio.

sand onto Steiner's bicycle. Steiner yelled at them to stop. When they did not respond, he approached and grabbed Maryam from behind, with one arm around her neck and the other arm around her waist, restraining her, then grabbed the phone and threw it to the ground, where it shattered. Maryam was "light-headed and crying" after the incident. Steiner denies that he grabbed or physically attacked anyone but admits "removing a phone from the hand of the person who was filming the vandalism of [his] bicycle by the others."

After Steiner left on his bicycle, plaintiffs reported the incident to the police, who obtained the video footage from Maryam's cell phone. Plaintiffs posted a "video compilation of the altercation" to their social media, leading to additional events not at issue in this appeal.

In March 2024, plaintiffs filed a complaint against Steiner. It alleged that on October 12, 2023, Steiner confronted plaintiffs as they constructed their message on the sand dune, called them terrorists, accused them of killing babies and beheading children, and of being members or supporters of Hamas, and told them they were fortunate to be in America driving a BMW as Palestinians. It alleged that Steiner started "violently dismantling [plaintiffs'] sign and charged directly at the girls while continuing to threaten them." It further alleged that as plaintiffs were recording the encounter, Steiner "accosted 13-year-old plaintiff Maryam [], grabbed her around the neck and waist, and threw her cell phone on the bike path, shattering it in the process." Plaintiffs alleged economic and emotional harm as a result of Steiner's conduct. The complaint asserted causes of action for (1) negligence; (2) violation of the Bane Act by threats, intimidation, or coercion; (3) violation of the Ralph Act by having committed a violent act motivated by the

5

perception of plaintiffs' national origin, race, citizenship, and political affiliation; (4) assault; and (5) battery.

Steiner responded with an anti-SLAPP motion to strike the complaint in its entirety. Steiner argued that plaintiffs' complaint should be stricken because the claims alleged are based on "Steiner's exercise of his constitutionally protected rights of free speech and petition concerning a public issue: the political and social discourse surrounding the Israeli-Palestinian conflict." Steiner further asserted that plaintiffs cannot demonstrate a probability of prevailing on their claims "due to the inconsistencies in their allegations, lack of credible evidence, and their own egregious misconduct." The motion was accompanied by declarations and exhibits.

Steiner asserted in his declaration that after expressing his view that their message was inappropriate given Hamas's attack on Israel, plaintiffs made antisemitic remarks, apparently presuming Steiner was Israeli or Jewish, although he is neither. Steiner stated that "[d]espite the barrage of anti-Semitic comments, [he] did not address the three individuals in a threatening manner." Steiner believed the encounter was over after both sides stated their intent to return over the following days; however plaintiffs began kicking his bicycle and sand into the gears and his helmet. They continued to damage his property after he shouted for them to stop, at which point he "took steps to protect [his] bike" by "removing a phone from the hand of the person who was filming the vandalism of [his] bicycle by the others" and throwing the phone toward plaintiffs' vehicle. Steiner later learned that plaintiffs had called the police and "falsely alleged that [he] physically attacked and strangled one of them without provocation." He received

6

"hundreds of death threats via online messenger apps and by phone" after plaintiffs' social media post and received a separation from the Army.

Plaintiffs filed an opposition to the anti-SLAPP motion and objections to Steiner's declaration. They also sought sanctions against Steiner, arguing the motion was frivolous. Plaintiffs asserted their claims were not based on Steiner's constitutionally protected speech, but on "the assault and battery of three Palestinian girls, one a minor, while they exercised their right to express themselves regarding the Israeli-Palestinian conflict." They argued that Steiner "targeted" them on the basis of their ethnicity and religious identity, intending to threaten and intimidate them because he did not agree with their message, and though his speech "was objectively offensive," it was his "*actions* culminat[ing] in physical violence" for which they seek redress. Khalil and Warrick submitted nearly identical declarations in support of plaintiffs' opposition.

Steiner filed a reply brief and evidentiary objections to the Khalil and Warrick declarations.

The trial court made oral findings at the hearing and later filed a written order denying Steiner's anti-SLAPP motion. The court sustained certain evidentiary objections on both sides and overruled the remaining objections. It observed that the case "involves a mix" of both "expressive and non-expressive elements" and "speech and conduct," making more difficult the determination of whether the lawsuit arises out of protected conduct. The court found that Steiner's "speech and expressive conduct," including dismantling the sign, were statements made at a place open to the public in a public forum and came within section 425.16, subdivision (e)(3) and (4), but that the expressive conduct did not extend to grabbing a person and throwing their phone.

As to the specific causes of action, the trial court concluded that although Steiner may have satisfied his initial burden as to the negligence and Bane Act claims, plaintiffs had met their responsive burden based on the court construing the complaint liberally "to include the assault and battery conduct" in the allegations. This was despite finding it "arguable that the available video evidence contradicts [p]laintiffs' characterizations of [Steiner]'s conduct." As to the Ralph Act, assault, and battery causes of action, the court found that the conduct giving rise to those claims did not arise out of activity protected by section 425.16. The court denied the request for sanctions, finding the motion was "not entirely devoid of merit" and noting that "several causes of action only survive the anti-SLAPP as a result of liberal interpretation of [p]laintiffs' allegations."

Steiner filed a timely notice of appeal of the trial court's order.

## II. DISCUSSION

Steiner contends that the trial court erred in denying his anti-SLAPP motion. He maintains that he met his threshold burden under the anti-SLAPP statute because plaintiffs' complaint expressly linked his alleged liability to his expressive conduct and there is "no evidence" to support plaintiffs' assertion that he engaged in physical violence. Steiner also challenges the court's evidentiary ruling on his objections to the Khalil and Warrick declarations.

Plaintiffs counter that Steiner's motion is premised on his version of events and improperly seeks adjudication of the credibility of the allegations against him. Plaintiffs argue that even if Steiner could meet his threshold burden to demonstrate the challenged claims arise from protected activity, the evidence submitted in opposition to the motion—even accounting for Steiner's objections—demonstrates a reasonable probability of prevailing.

8

## A. The Anti-SLAPP Statute

Section 425.16, commonly known as the anti-SLAPP statute, "is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).) It affords defendants the opportunity to bring a special motion to strike a cause of action arising from constitutionally protected speech or petitioning activity. (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 320 (*Barry*); *Laker, supra,* 32 Cal.App.5th at pp. 759–760.) "If a claim arises out of an 'act . . . in furtherance of [a] person's right of petition or free speech . . . in connection with a public issue,' the claim must be stricken unless the nonmoving party establishes 'a probability that [it] will prevail on the claim.' ([]§ 425.16, subd. (b)(1).)" (*Guracar v. Student Loan Solutions, LLC* (2025) 111 Cal.App.5th 330, 341 (*Guracar*).)

The trial court evaluates a section 425.16 motion to strike in two steps. First, the court examines the nature of the conduct that underlies the plaintiff's allegations to determine whether it is protected by section 425.16; next, the court assesses the merits of the plaintiff's claim. (*Barry, supra,* 2 Cal.5th at p. 321; *Laker, supra,* 32 Cal.App.5th at p. 760.)

In the first step, the trial court determines whether the defendant has shown the allegations underlying the plaintiff's claim are in furtherance of the right of petition or free speech as expansively defined by the anti-SLAPP statute (§ 425.16, subd. (e)) and thus a "protected activity" under one or more of the four categories of protected acts set out in section 425.16, subdivision (e) (section 425.16(e)). (*Wilson, supra,* 7 Cal.5th at p. 884.) The defendant must also show that the claim at issue " 'aris[es] from' " such protected activity – a burden that courts have recognized "is not always easily met."

9

(*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66.) "[A] claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity," much less because protected activity "provides evidentiary support or context for the claim." (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621.) Instead, the protected activity "must 'supply elements of the challenged claims.' " (*Ibid.*; see also *Wilson*, at p. 884 ["To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' "].)

If the defendant prevails at the first step, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the merits of the challenged claim or claims. (§ 425.16, subd. (b)(1); *Wilson*, *supra*, 7 Cal.5th at p. 884.) To establish a probability of prevailing, the nonmoving party—here, plaintiffs—"must demonstrate that the claim is 'legally sufficient and factually substantiated'—that is, the claim has ' "minimal merit" ' and the factual showing supporting it, if accepted, 'would be sufficient to sustain a favorable judgment.' " (*Guracar*, *supra*, 111 Cal.App.5th at p. 341; see also *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.)

A trial court at the second step "does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384–385 (*Baral*).) "If the plaintiff is unable to demonstrate that his or her claim has at least minimal merit, then the trial court should deem the

10

cause of action a SLAPP and should strike it." (*Laker*, *supra*, 32 Cal.App.5th at p. 760.)

   *B. Standard of Review*

   "We review de novo the grant or denial of any anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Park*, *supra*, 2 Cal.5th at p. 1067.) We consider the pleadings and declarations, accepting as true the evidence that favors the plaintiff and evaluating the defendant's evidence " ' " 'only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " ' " (*Barry*, *supra*, 2 Cal.5th at p. 321.)

   If we conclude that the trial court did not err in its resolution of the first step of the anti-SLAPP analysis, we may affirm the court's order without considering the second step of the anti-SLAPP framework. (See *Park*, *supra*, 2 Cal.5th at p. 1061; *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 110 (*Optional*).)

   *C. Evidentiary Objections*

   Steiner contends the trial court erroneously overruled certain objections to the Khalil and Warrick declarations and suggests the improper consideration of plaintiffs' evidence constituted prejudicial error. Plaintiffs respond that Steiner has shown no abuse of discretion in the court's rulings, and even if this court were to consider only the evidence to which there were no objections made, that would be sufficient to defeat the motion to strike.

   We review the trial court's evidentiary rulings in connection with an anti-SLAPP motion for an abuse of discretion. (*Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424, 1444.) To be considered for purposes of deciding the anti-SLAPP motion, the statements at issue must be

11

" 'capable of being admitted at trial, i.e., evidence which is competent, relevant and not barred by a substantive rule.' " (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 947 (*Sweetwater*).) That is, the court may consider a plaintiff's declaration "if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial." (*Id*. at p. 949.) The court abuses its discretion only when its decision "exceeds the bounds of reason, all of the circumstances before it being considered." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

Regarding the declaration of Khalil, the trial court sustained several of Steiner's objections on grounds of speculation and lack of foundation. However, it overruled those objections pertaining to Khalil's statements about her fear and intimidation, which the court found were relevant to certain causes of action. The court similarly sustained certain objections to the declaration of Warrick, which was substantively almost identical to that of Khalil. However, the court overruled two objections because they described party statements.

Steiner asserts that the trial court erred in overruling his objections (Nos. 10 and 12) challenging Khalil's statement about her belief as to why Steiner confronted plaintiffs and, in her words, " 'physically and verbally attacked' " them. Her declaration stated, " 'It is my belief that [d]efendant confronted us because we were wearing hijabs, because we were young women, and because of what our sign read. It is my belief that [d]efendant acted with the intention to intimidate us and cause harm, both physical and emotional.' " Further, " 'It is my belief that [d]efendant physically and verbally attacked us because we were Palestinian and for writing "Free Palestine" on Scribble Hill.' " Steiner contends that his objections should

12

have been sustained on grounds of speculation because the statements opine on Steiner's state of mind and intentions, which Khalil could not know.

" ' "A lay witness may express an opinion based on his or her perception, but only where helpful to a clear understanding of the witness's testimony (Evid. Code, § 800, subd. (b)), 'i.e., where the concrete observations on which the opinion is based cannot otherwise be conveyed.' [Citation.]" [Citation.] Such a situation may arise when a witness's impression of what he or she observes regarding the appearance and demeanor of another rests on "subtle or complex interactions" between them [citation] or when it is impossible to otherwise adequately convey to the jury the witness's concrete observations. [Citations.] A lay witness generally may not give an opinion about another person's state of mind, but may testify about objective behavior and describe behavior as being consistent with a state of mind.' " (*People v. Sanchez* (2016) 63 Cal.4th 411, 456 (*Sanchez*); see *People v. Guenther* (2024) 104 Cal.App.5th 483, 527–528 (*Guenther*).)

Khalil's statements are lay witness opinion based on her perception and observations of Steiner's *perceived* intent, not factual statements of Steiner's actual intent. The Evidence Code does not bar admission of such opinion testimony. (See *Sanchez*, *supra*, 63 Cal.4th at p. 456; *Guenther*, *supra*, 104 Cal.App.5th at p. 528.) The factual underpinnings of Khalil's statements (i.e., the women were wearing hijabs and the content of their sign) are not contested. In the emotionally charged context of the parties' interaction, Khalil's opinion based on her firsthand perception of Steiner's conduct and demeanor involves the complex influences of social cues, body language, and past experience. Under these circumstances, we discern no abuse of discretion in the trial court's ruling as to objection Nos. 10 and 12 to

13

the Khalil declaration, nor to objection Nos. 6, 9, and 10 of the substantively identical Warrick declaration.

Steiner also contends the trial court also erred in overruling his objection Nos. 5, 6, 7, and 8 to the Khalil declaration, as well as the parallel objection Nos. 4, 5, 7, 8, and 9 to the Warrick declaration. He asserts that the video evidence directly contradicts the subject statements in plaintiffs' declarations regarding what Steiner said, and the court should have sustained his objections on the ground that the statements violate the "best evidence rule" (citing Evid. Code, § 1523) and misquote Steiner's speech (citing Evid. Code, §§ 210, 352, 403).

We are not persuaded that the trial court abused its discretion in overruling these objections. The record establishes that only portions of the interaction were recorded by cell phone video. The video appears to begin when Steiner is already on top of the dune and dismantling plaintiffs' sign. As to statements in the Khalil and Warrick declarations concerning Steiner's alleged language as he " 'began rapidly charging up the hill' " toward them and as he " 'climbed further up the sand dune calling us terrorists,' " it is unclear whether these alleged statements may have been made prior to the start of the recording. Thus, they are not excluded by the general prohibition against oral testimony to prove the content of a writing (or, in this case, a video recording). (*People v. Panah* (2005) 35 Cal.4th 395, 475 (*Panah*) [treating videotape as a "writing" for purposes of best evidence rule].)

Moreover, to the extent the quoted language in the declarations differs from the video evidence, as with respect to Steiner's alleged reference to plaintiffs being Hamas supporters and " 'killing babies,' " the contents of the statements themselves are not directly at issue in the anti-SLAPP motion. (*Panah*, *supra*, 35 Cal.4th at p. 475 [explaining the best evidence rule

14

" 'applies only when the contents of a writing are at issue' "].) Steiner's potential liability with respect to plaintiffs' claims does not hinge on the words that were spoken in his oral exchange with plaintiffs but on his physical conduct and the inferences of threat, intimidation, and/or fear of imminent harm and offensive contact that may reasonably be drawn from that evidence. The court "may consider" a plaintiff's declaration "if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial." (*Sweetwater*, *supra*, 6 Cal.5th at p. 949.) Moreover, we agree with plaintiffs that even assuming this evidence to be inadmissible under the standard articulated in *Sweetwater*, the exclusion of those statements does not alter our first step anti-SLAPP analysis, which focuses primarily on the claims and allegations in the complaint, and on limited evidence in the declarations establishing the context of the interaction and each side's perception of what transpired. We decide any abuse of discretion with respect to the trial court's rulings on these evidentiary objections is harmless. (*Panah*, at p. 475.)

### D. Application of the Anti-SLAPP Statute to Plaintiffs' Claims

Steiner bears the initial burden to demonstrate that plaintiffs' negligence, Bane Act, Ralph Act, and assault claims arise from protected acts under section 425.16(e). He does not challenge the trial court's decision as to plaintiffs' battery cause of action.

"To demonstrate that the 'challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged' [citation], [Steiner] must first make a prima facie showing that [his] conduct falls within one of the categories set out in section 425.16, subdivision (e)." (*Laker*, *supra*, 32 Cal.App.5th at pp. 762–763.) Steiner contends that his conduct falls within the final two statutory provisions of section 425.16(e).

15

Section 425.16(e)(3) defines protected activity to include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Section 425.16(e)(4) defines protected activity to include "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

For purposes of section 425.16(e)(3), "[a] public forum is a place open to the use of the general public ' "for purposes of assembly, communicating thoughts between citizens, and discussing public questions." ' " (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1130.) Although not defined by statute, courts have interpreted the phrase "issue of public interest" to refer to "something of concern to a substantial number of people" (*id.* at p. 1132) with "some degree of closeness between the challenged statements and the asserted public interest." (*Ibid.*) As the phrase "in connection with . . . an issue of public interest" also applies to section 425.16(e)(4), we address the "issue of public interest" together. (See *Bernstein v. LaBeouf* (2019) 43 Cal.App.5th 15, 22.) With respect to section 425.16(e)(4), a court "must consider the context as well the content of a statement in determining whether that statement furthers the exercise of constitutional speech rights in connection with a matter of public interest." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149 (*FilmOn*).)

We agree with the trial court's assessment that "much of" Steiner's "speech and activity in taking down the message on the sand dune is protected under the First Amendment." Steiner's initial conduct during the encounter at Scribble Hill consisted of (1) engaging in a heated oral exchange with three individuals about their public display of support for the Palestinian cause during a time of heightened public awareness and debate

16

over the Israeli-Palestinian conflict, and (2) physically disassembling the sticks and shrubs that made up the disputed message.

The timing of these acts shortly after the October 7, 2023 attack by Hamas on Israel, the publicly accessible and highly visible location on Scribble Hill, and the subject matter of the dispute, place Steiner's oral statements and conduct dismantling plaintiffs' sign within the statutory framework for "statement[s] . . . made in a place open to the public or a public forum in connection with an issue of public interest." (§ 425.16(e)(3).) Further, the close nexus between Steiner's exercise of his right of free speech and the asserted issue of public interest (disagreeing and attempting to undo the " 'Free Palestine' " message visible to passersby) fulfills the " 'in connection with' requirement" (*FilmOn*, *supra*, 7 Cal.5th at p. 149) for purposes of section 425.16(e)(4).

Plaintiffs do not dispute that certain aspects of Steiner's conduct challenging plaintiffs' political speech, such as by engaging in a heated oral exchange about the sign's message, come within the scope of the anti-SLAPP statute. They assert that their claims "are not based on" Steiner's protected speech insofar as they "do not seek to hold Steiner liable because he decimated their sign or shouted Islamophobic rhetoric at them." Rather, they maintain the allegations concerning Steiner's speech and conduct dismantling the sign are provided merely to describe the context and motive for the intimidating and threatening language and physical attack that followed—demonstrating that Steiner targeted plaintiffs "because they are Muslim and supporters of Palestine."

Plaintiffs are correct that, to meet his threshold burden, Steiner must not only show that his conduct falls within one of the categories set out in section 425.16(e), but that each challenged "cause of action *arises from* that

protected conduct." (*Laker, supra*, 32 Cal.App.5th at p. 763.)  As explained in *Laker*, "The California Supreme Court has clarified the test for determining whether something arises from protected conduct.  '[A] claim may be struck only if the speech or petitioning activity itself is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' (*Park, supra*, 2 Cal.5th at p. 1060.)  To determine whether the speech constitutes the wrong itself or is merely evidence of a wrong, 'in ruling on an anti-SLAPP motion courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' (*Id*. at p. 1063.)" (*Laker*, at p. 763; accord, *Wilson, supra*, 7 Cal.5th at p. 884.)

We separately address the four claims at issue.

### 1. Negligence

The complaint alleged that on the date in question, Steiner "w[as] negligent in that [he] carelessly failed to exercise due care by confronting and engaging in a verbal confrontation with plaintiffs as alleged herein."  The cause of action further "reallege[d] and incorporate[d] by reference" the allegations previously set forth.  These allegations included that Steiner "approached the plaintiffs and called them terrorists," "accused [them] of being members or supporters of Hamas" and of "killing babies and be-heading children," "started violently dismantling their sign and charged directly at the girls while continuing to threaten them," and "accosted 13-year[-]old [] Maryam Khalil, grabbed her around the neck and waist, and threw her cell phone on the bike path."

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting

18

injury.' " (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 (*Brown*).) "[N]ot every defendant owes every plaintiff a duty of care. A duty exists only if ' "the plaintiff's interests are entitled to legal protection against the defendant's conduct." ' " (*Ibid.*) Civil Code section 1714 sets out the " 'general rule' governing duty." (*Brown*, at p. 213.) It "establishes the default rule that each person has a duty 'to exercise, in his or her activities, reasonable care for the safety of others.' " (*Id.* at p. 214.) This general duty obligates a person " 'to exercise due care in his or her own actions so as not to create an unreasonable risk of injury to others.' " (*Ibid.*)

Steiner contends that he owed plaintiffs no special duty beyond this general duty of reasonable care, and the "dismantling of a political sign and verbal disagreement on a publicly visible sand dune did not create a duty to avoid confrontation." Steiner points out that if participating in constitutionally protected speech were to give rise to a duty to avoid contentious political debate, it would create a substantial chilling effect. Steiner further asserts there is no allegation to support the element of breach, since plaintiffs' "entire theory of breach rests on the claim that Steiner's verbal exchanges and expressive conduct during the debate constituted negligence." He maintains that although the cause of action incorporates prior factual allegations, the "complaint on its face seeks to impose liability based on [his] speech and expressive conduct."

Plaintiffs counter that the anti-SLAPP statute's protections do not safeguard violent and threatening acts, even if conducted in the context of political protest or speech. (See, e.g., *Lam v. Ngo* (2001) 91 Cal.App.4th 832, 851–852 [affirming denial of anti-SLAPP motion to the extent causes of action against Doe defendants arose from unprotected acts (including

19

accosting patrons and slashing car tires) conducted during protests against restaurant hosting a North Vietnamese communist flag].)

Steiner's narrow reading of the complaint overlooks the allegations that form the basis for plaintiffs' claim for damages and plaintiffs' framing of the conduct giving rise to the negligence claim. Courts have a duty to liberally construe the allegations of the complaint "for the purpose of determining its effect, . . . with a view to substantial justice between the parties." (§ 452; see also § 425.16, subd. (b)(2) [court shall consider the pleadings and affidavits in considering the facts upon which liability is based].) To ignore the allegations incorporated by reference under the negligence claim would contravene this basic principle of law and negate the efficacy of a common pleading practice. (See *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 931–932; see also *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1001 [considering whether incorporation of cause of action into later cause of action in complaint was sufficient for court to conclude the later-alleged cause of action arose from protected activity].)

Construing the allegations of the complaint liberally (as we must) for purposes of evaluating the facts upon which the negligence claim is based, we read the negligence claim alleging a failure to exercise due care "by confronting and engaging in a verbal confrontation with plaintiffs *as alleged herein*" (italics added) as based upon the full range of conduct described in the confrontation. This includes the allegations that Steiner "charged directly" at plaintiffs "while continuing to threaten them" and "accosted" Maryam by grabbing her and throwing and breaking her phone.

Furthermore, " '[i]n deciding whether the "arising from" requirement is met, a court considers "the pleadings, and supporting and opposing affidavits

20

stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b).)' [Citation.] Thus, we are 'not limited to examining the allegations of the complaint alone but rather consider the pleadings and the factual material submitted in connection with the special motion to strike.' " (*Optional*, *supra*, 18 Cal.App.5th at p. 111.) The declarations submitted in opposition to and in support of the motion characterize differently the nature and intensity of the words that were spoken and Steiner's physical conduct but generally reinforce our conclusion that the confrontation encompassed more than a heated exchange of words. According to plaintiffs, Steiner rapidly ascended the hill and "charged directly" toward plaintiffs, dismantled the "Free Palestine" sign while heatedly arguing and accusing plaintiffs of supporting or being members of Hamas, and engaged in a physical altercation that at a minimum consisted of Steiner wrenching the cell phone from Maryam and throwing it to the street.

As our Supreme Court has explained, "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park*, *supra*, 2 Cal.5th at p. 1060.) "A cause of action may be 'triggered by' or associated with a protected act, but it does not necessarily mean the cause of action arises from that act." (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537 (*Kolar*); *Park*, at p. 1063 [" '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' "].)

As alleged, Steiner's expressions of disagreement with plaintiffs' message by disputing and dismantling the sign did not occur in a vacuum but unfolded concurrently with alleged unlawful conduct comprising physical

aggression and oral intimidation. Steiner's speech, standing alone, provides context and evidence for the claim of liability but that does not mean the action arose from it for purposes of the anti-SLAPP statute. Instead, the factual allegations that "supply [the] elements" (*Park*, *supra*, 2 Cal.5th at p. 1064) of plaintiffs' negligence claim are those describing Steiner's aggressive and threatening conduct during the course of the verbal confrontation, marked by Steiner allegedly yelling " 'I'm coming for you,' " physically charging toward plaintiffs, pulling apart their sign while accusing them of being terrorists or supporting terrorism, and grabbing Maryam. Thus, it is the conduct that accompanied Steiner's protected speech, including the intimidating language, rapid approach and threat that he was " 'coming for [them],' " and alleged physical escalation of the conflict, that gives rise to the elements of duty, breach, causation, and damages. Plaintiffs might not be " ' "entitled to legal protection against" ' " (*Brown*, *supra*, 11 Cal.5th at p. 213) a passerby engaging in offensive speech while criticizing a political protest message, but they are entitled to legal protection from allegedly threatening and intimidating conduct that escalates into a physical attack.

This court's decision in *Laker* demonstrates the distinction between protected speech that itself gives rise to the challenged claim and "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery." (*Baral*, *supra*, 1 Cal.5th at p. 394.) Laker, a university professor, sued the university and its associate dean for defamation and retaliation in connection with internal investigations conducted into complaints against the then-chair of the department, as well as against Laker. (*Laker*, *supra*, 32 Cal.App.5th at pp. 753–754.) As to the retaliation cause of action, the appellate court recognized that the complaint alleged retaliation arising from both protected and unprotected activity. (*Id*.

22

at p. 758.)  We explained, "While Laker will no doubt need to use speech by University employees as evidence to support his claims, the speech is not—by itself—the basis of the claim." (*Id.* at p. 773.)  Instead, the court decided that "Laker's retaliation cause of action is premised on his allegation that the University's decision to pursue three 'meritless' investigations of Laker was itself conduct in retaliation for" Laker's actions in the prior investigation of the department chair.  (*Id.* at p. 776.)  This court therefore affirmed the trial court's order denying the university's anti-SLAPP motion against the retaliation cause of action "insofar as it is based on the allegations that the University pursued three meritless investigations of [Laker] and decided to red flag him." (*Id.* at p. 777.)

In this case, there is no question that plaintiffs filed their lawsuit in response to protected speech activity, insofar as Steiner's verbal disagreement with plaintiffs about their sign and its significance in light of the October 7 attack on Israel and war in Gaza constituted such protected speech.  Nevertheless, the claim for negligence falls outside of the anti-SLAPP statute's protection because it arises from Steiner's unprotected conduct with respect to his duty to not engage in threats, intimidation, or physical violence while exercising his free speech right to disagree with another's public political statement.

Plaintiffs' negligence claim is akin to the retaliation claim in *Laker*, which in relevant part was not based on the university employees' protected statements during the investigation of Laker, but on the alleged retaliatory and meritless investigations initiated by the university after the investigation into the department chair.  (*Laker, supra,* 32 Cal.App.5th at p. 777; see also *Kolar, supra,* 145 Cal.App.4th at p. 1540 [affirming denial of anti-SLAPP motion because plaintiffs' attorney malpractice claim did not

23

arise from the attorney's protected activity (litigating the client's case) under section 425.16(e) but on the "attorney's incompetent handling" of that prior representation].)

Steiner argues that the trial court erred by separating his conduct into isolated moments and failed to consider the entire context of the incident. Citing *Baral*, he asserts that courts must analyze whether the limited, unprotected conduct (i.e., grabbing the phone) was "inextricably linked to the protected expressive conduct and whether it was incidental or necessary to effectuate the speech-related activity." This argument misconstrues *Baral*. In *Baral*, our Supreme Court clarified that when a cause of action is based on allegations of both protected and unprotected activity, the court at the first step of the anti-SLAPP procedure disregards the unprotected activity to decide only whether "relief is sought based on allegations arising from activity protected by the statute." (*Baral*, *supra*, 1 Cal.5th at p. 396.) If relief is indeed sought based on allegations arising from protected activity, the second step is reached. (*Ibid.*)

Because plaintiffs' negligence claim arises from Steiner's alleged threatening and physically aggressive conduct against plaintiffs that accompanied the verbal confrontation and not from his triggering speech in response to plaintiffs' "Free Palestine" sign, Steiner has failed to meet his burden at the first step of the anti-SLAPP procedure. We therefore affirm the trial court's denial of the anti-SLAPP motion as to the negligence cause of action.

### 2. Bane Act (Civ. Code, § 52.1)

Steiner contends that plaintiffs' Bane Act claim "necessarily arises from and relates to Steiner's speech and expressive conduct." Relying on the trial court's finding that he " 'may have satisfied his burden as to the [Bane

24

Act] causes of action,' " Steiner makes only a conclusory argument that "any allegations related to" his "speech at the top of the dune necessarily stem from speech-related activities and expressive conduct" and focuses on plaintiffs' burden at the second step to demonstrate a probability of prevailing on the merits. The conclusory argument that the claim "necessarily stem[s]" from protected speech is insufficient to carry Steiner's burden. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 [appellant must support each claim with meaningful analysis and citation to legal authority].)

Drawing from his arguments relative to the second step analysis and his points and authorities in support of his motion before the trial court, Steiner maintains that plaintiffs' characterization of his actions on the sand dune as threatening is insufficient to avoid being stricken under the anti-SLAPP statute because the interactions "while contentious, were protected speech concerning a public issue." Steiner asserts that his speech never threatened violence, even in the video recordings, and the allegations of physical contact do not support an inference of intent to suppress plaintiffs' speech, since his grabbing of the phone occurred only in response to plaintiffs kicking sand onto his bike and refusing to stop despite his demand to stop.

The Bane Act authorizes a private right of action for damages and injunctive relief against a person, "whether or not acting under color of law," who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment . . . of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." (Civ. Code, § 52.1, subd. (b); *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 841.) The California Supreme Court has explained that while "Civil Code section 52.1

25

was adopted 'to stem a tide of hate crimes' " (*Venegas*, at p. 843), the statute is not "limited to such crimes" (*ibid*.) and does not require a plaintiff to show the alleged threat or intimidation had a discriminatory purpose. (*Ibid*.) Nevertheless, speech alone is insufficient to establish a Bane Act violation unless "the speech itself threatens violence." (Civ. Code, § 52.1, subd. (k)[7]; *Julian v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 395.) "[T]he statute was intended to address only egregious interferences with constitutional rights, not just any tort. The act of interference with a constitutional right must itself be deliberate or spiteful." (*Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 959.)

Like plaintiffs' negligence claim, the facts upon which the Bane Act claim are based are not limited to the purely oral exchange or expressive conduct (dismantling the sign) that occurred on top of the sand dune. The Bane Act claim asserted in plaintiffs' second cause of action alleged that Steiner "engaged in threats, intimidation or coercion that caused plaintiffs to reasonably believe that if they exercised their right to free speech and expression, then [Steiner] would commit violence against them and that [Steiner] had the apparent ability to carry out the threats." It further alleged that Steiner "acted violently against plaintiffs and their property to prevent them from exercising their right to free speech and expression," "violently retaliated against plaintiffs for having exercised those rights," and "engaged

---

[7] Civil Code section 52.1, subdivision (k) states, "Speech alone is not sufficient to support an action brought pursuant to subdivision (b) or (c), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat."

in this conduct in violation of [p]laintiffs' civil rights, including . . . the rights afforded to them by [Civil] Code [section] 43 et seq. to be free from bodily harm or insult." It also realleged and incorporated the factual allegations previously set forth.

The claim that Steiner engaged in threats and intimidation and acted violently toward plaintiffs and their property to prevent them from exercising their rights of speech and expression and/or in response to their having exercised those rights must be construed together with the oral insults, physical intimidation, and physical grabbing of Maryam alleged in the complaint's factual allegations. These allegations related to Steiner's physical actions undercut his argument that his oral debate with plaintiffs concerning the Israeli-Palestinian conflict and dismantling of their sign is the wrong complained of, as opposed to "evidence of liability or a step leading to some different act" (*Park*, *supra*, 2 Cal.5th at p. 1060) giving rise to the liability asserted. While liability under the Bane Act cannot be based on speech alone, it may be based on "a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat." (Civ. Code, § 52.1, subd. (k).)

Here, the interwoven nature of the allegations, which include both protected speech and unprotected intimidation, aggression, and physical violence, complicate the first step analysis. Nevertheless, by disregarding the unprotected activity and looking only to whether "relief is sought based on allegations arising from" protected activity (*Baral*, *supra*, 1 Cal.5th at p. 396), we conclude that the Bane Act claim does not seek relief based on Steiner's

protected conduct. Instead, that conduct provides evidence supporting the claim of liability. (*Park*, *supra*, 2 Cal.5th at p. 1060.) The factual allegations that "supply [the] elements" of the Bane Act claim (*id*. at p. 1064) are those focused upon the alleged act of charging at plaintiffs and accosting Maryam, which given the context in which those acts occurred—including Steiner's alleged statements about support for terrorism, reference to plaintiffs as Palestinians, and "violent[] dismantling" of their sign—gave rise to plaintiffs' claim of intimidation and threat based on the exercise of their constitutional rights. (Civ. Code, § 52.1, subd. (b).)

We decide that plaintiffs' Bane Act claim arises from Steiner's unprotected conduct, not the speech and expressive conduct providing context for and supporting the claim for liability. We therefore affirm the trial court's denial of the anti-SLAPP motion as to the Bane Act cause of action.

### 3. Ralph Act (Civ. Code, § 51.7)

Steiner contends the trial court erroneously denied the anti-SLAPP motion with respect to plaintiffs' Ralph Act claim. Steiner maintains that insofar as the Ralph Act prohibits conduct similar to that of the Bane Act, plaintiffs' claim is also "based entirely on Steiner's expressive conduct." He asserts that the "prolonged, nonviolent verbal disagreement" with plaintiffs at the top of the sand dune "in which [plaintiffs]' national origin and political views were clear" took place "without violence or threats by Steiner." He further asserts that the record confirms that his statements "were political in nature, directed at Hamas and the broader geopolitical conflict, rather than at [plaintiffs] as individuals."

It is Steiner's burden as the appellant to demonstrate the trial court erred in finding that the conduct giving rise to plaintiffs' Ralph Act claims

was not protected by section 425.16. (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620.)

Under the Ralph Act, "All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of [s]ection 51,[8] . . . or because another person perceives them to have one or more of those characteristics. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive." (Civ. Code, § 51.7, subd. (b)(1).)

As with the Bane Act, a violation of the Ralph Act based on "[s]peech alone" (Civ. Code, § 51.7, subd. (e)(1)) requires a showing that the offending speech "itself threatens violence against a specific person or group of persons." (*Id.*, subd. (e)(1)(A).) The plaintiff must show "all of" the enumerated elements (*id.*, subd. (e)(1)) including not only that the speech threatens violence, but that the person threatening violence "is acting in reckless disregard for the threatening nature of their speech" (*id.*, subd. (e)(1)(C)), "has the apparent ability to carry out the threat" (*id.*, subd. (e)(1)(D)), and that the person or group against whom the threat is directed "reasonably fears that, because of the speech, violence will be committed against them or their property" (*id.*, subd. (e)(1)(B)).

---

[8] Civil Code section 51, subdivisions (b) and (e) list and define certain protected categories of persons for purposes of receiving equal accommodations, privileges, or services in business establishments. These categories include a person's "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status." (*Id.*, subd. (b).)

29

Steiner's characterization of plaintiffs' claim as based upon conduct consisting entirely of political speech and expressive conduct, without violence or threats, is contradicted by the complaint and plaintiffs' declarations. (§ 425.16, subd. (b)(2).) Plaintiffs' third cause of action for violation of the Ralph Act alleged that on the date of the incident, Steiner "committed a violent act against [p]laintiffs and their property," and a "substantial motivating reason" for his conduct was his "perception of [p]laintiffs' national origin, race, citizenship, and political affiliation." The complaint further alleged that plaintiffs sustained economic and emotional harm because of Steiner's conduct. It also realleged and incorporated the prior factual allegations.

The alleged conduct giving rise to plaintiffs' Ralph Act claim is unambiguously the commission of "a violent act" against plaintiffs and their property. Construing the Ralph Act claim with the incorporated allegations, plaintiffs have alleged that Steiner physically charged at them, grabbed Maryam, and threw the cell phone to the ground, breaking it. Furthermore, plaintiffs have alleged that this conduct was substantially motivated by Steiner's perception of plaintiffs as being Palestinian or of Palestinian national origin, as also evidenced by Khalil's and Warrick's declarations that as Steiner approached and dismantled the sign, he accused them of being " 'peak Palestinian' " and of supporting terrorism and Hamas. Thus, the claim for violation of the Ralph Act is based upon allegations that Steiner made threatening advances toward plaintiffs and accosted Maryam in substantial part because of their ancestry or national origin. (See *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1570 [affirming denial at first step of anti-SLAPP motion based on claim for violation of Civil Code section 51.7,

30

where the complaint alleged "that defendant committed violence and made threats of violence against plaintiff based upon his religion"].)

Given the nature of the alleged conduct underlying the cause of action, Steiner's contention that the claim is based solely on political speech and expressive conduct is unpersuasive. Steiner has failed to show that the challenged cause of action arises from his protected conduct debating plaintiffs' ideology and attempting to erase their public protest message, as opposed to his alleged acts of physical aggression. (*Laker*, *supra*, 32 Cal.App.5th at p. 763; *Park*, *supra*, 2 Cal.5th at p. 1060.) Put differently, Steiner's expressions of political disagreement and identification of plaintiffs as Muslim or Palestinian women did not give rise to the Ralph Act claim but are arguably revelatory of his motive for attacking them. We conclude the trial court did not err in denying Steiner's motion as to plaintiffs' Ralph Act claim at the first step of the anti-SLAPP analysis.

### 4. Assault

Steiner contends the trial court erred in concluding that the anti-SLAPP statute does not apply to plaintiffs' assault claim. He asserts that "the record contains no evidence that Steiner engaged in any threatening conduct" to support the elements of assault. Specifically, he maintains the record contains no suggestion that he made any threatening gestures, advanced toward plaintiffs in an aggressive manner, or engaged in conduct that could reasonably be construed as an attempt to instill fear of bodily harm, and asserts that the only portion of the interaction in which plaintiffs could plausibly claim to have experienced apprehension of imminent harm or offensive contact occurred at the top of the sand dune.

We do not agree with Steiner's characterization of the record or the pleadings. Furthermore, plaintiffs' evidentiary burden is not germane to the

test at the first step of the anti-SLAPP analysis. We do not, at this juncture, consider the adequacy of evidence in the record to support a meritorious claim, nor even whether plaintiffs can make a prima facie showing of their likelihood of prevailing on the merits of the challenged claim. (§ 425.16, subd. (b)(1); *Wilson, supra*, 7 Cal.5th at p. 884.) By focusing on the evidence in the record, Steiner appears to conflate the parties' burdens at the first and second steps of the analysis. In so doing, Steiner does not meet his initial burden of showing that the alleged conduct or speech underlying the challenged claim—here, assault—falls within one or more of the categories of protected acts he has identified under section 425.16(e). (*Wilson*, at p. 884.)

A civil assault claim " 'is based upon an invasion of the right of a person to live without being put in fear of personal harm. Every person has "the right of protection from bodily restraint or harm." ' " (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1604.) Its elements are: (1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiffs in a harmful or offensive manner; (2) plaintiffs reasonably believed they were about to be touched in a harmful or offensive manner; (3) plaintiffs did not consent to defendant's conduct; (4) plaintiffs were harmed; and (5) defendant's conduct was a substantial factor in causing plaintiffs' harm. (*So v. Shin* (2013) 212 Cal.App.4th 652, 668–669.)

Incorporating the allegations previously set forth in the complaint, the cause of action for assault alleged that, by his actions, Steiner intended to cause harmful or offensive contact and plaintiffs reasonably believed they were about to be touched, without their consent, in a harmful and offensive manner. Based on the incorporation by reference of the factual allegations of the complaint, the allegation that plaintiffs reasonably believed they were about to be touched in a harmful and offensive manner cannot reasonably be

32

construed as being based exclusively on Steiner's protected speech or expressive acts toward the sign.

As with plaintiffs' Bane Act claim, the allegations underlying the assault claim include both protected acts (Steiner's allegedly offensive rhetoric and "violent" dismantling of the "Free Palestine" sign) and unprotected acts involving aggression and physical violence (Steiner's alleged acts of charging toward plaintiffs, grabbing Maryam, and throwing her phone to the street with force enough for it to shatter). Steiner's assertion that plaintiffs' reasonable apprehension of imminent harm or offensive contact could only have taken place at the top of the dune while Steiner was disassembling the sign and arguing with plaintiffs about their message is contravened by the allegations in plaintiffs' complaint.

Disregarding Steiner's unprotected acts of physical aggression and looking only to whether "relief is sought based on allegations arising from" his protected speech and expressive conduct (*Baral*, *supra*, 1 Cal.5th at p. 396), we conclude that the assault claim—like the cause of action for violation of the Bane Act—does not arise from Steiner's protected conduct, though his speech and mannerisms at the top of the dune provides explanatory context and arguable support for the alleged assault. (See *Park*, *supra*, 2 Cal.5th at p. 1060.) We will therefore affirm the trial court's denial of the anti-SLAPP motion as to the assault cause of action.

Having determined that none of plaintiffs' claims at issue on appeal arise from those aspects of Steiner's alleged conduct constituting protected speech activities under section 425.16(e)(3) and (4), we need not decide whether plaintiffs have met their burden at the second step of the anti-SLAPP procedure to establish a probability of prevailing on their claims. (*Optional*, *supra*, 18 Cal.App.5th at p. 110.)

33

Our analysis herein should not be construed as offering any opinion on the merits of plaintiffs' claims. (*D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1225.) We have determined only that Steiner may not rely on the protected nature of his initial conduct engaging in an argument with plaintiffs over their public political views as grounds at this early stage to dismiss plaintiffs' lawsuit by way of an anti-SLAPP motion, where the claims at issue do not arise from that protected conduct but from the unprotected acts that followed.

## III.  DISPOSITION

The trial court's order denying the special motion to strike under Code of Civil Procedure section 425.16 is affirmed. Plaintiffs are entitled to recover reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____

Danner, J.

WE CONCUR:

_____

Greenwood, P. J.

_____

Bromberg, J.

**H052541**
***Khalil et al. v. Steiner***